IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  04-cv-00053-WYD-MJW

BONNIE WINCHESTER,

      Plaintiff,

v.

BRIAN COSAINEAU,
THOMAS BEACH,
JAMES COLE,
TROY NICHOLSON,
RANDALL PICKREL,
DAN ALLEY,
MILES KULBY, and
GAIL CONNOR,

      Defendants.
_____

**ORDER GRANTING SUMMARY JUDGMENT**
_____

I.     INTRODUCTION

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment filed March 2, 2005.  This motion asserts that summary judgment is proper on Plaintiff's illegal entry and search claims asserted pursuant to 42 U.S.C. § 1983 based on the doctrine of qualified immunity.  For the reasons stated below, this motion is GRANTED and the trial set to commence on Monday, January 23, 2006, is vacated.

II.    FACTUAL BACKGROUND

Plaintiff's claims allege violations of her right under the Fourth Amendment to be free from unreasonable searches and seizures.  The claims relate to the warrantless entry

into and limited search of her home that occurred in the early morning hours of July 3, 2002. The entry into Plaintiff's home arose from a dispatch of a possible suicide/overdose at 3690 South Fox Street, Apartment 205 (Plaintiff's residence), which was received by both the Englewood Police Department and the Englewood Fire Department.

More specifically, the facts, as viewed in the light most favorable to Plaintiff, are that just before 3:00 a.m., the dispatch center at the Englewood Safety Complex aired over the radio to the Englewood Police Department and Fire Department a dispatch of a possible suicide/overdose on South Fox Street. Dispatch also aired over the radio that the reporting party, a person giving his first name as "Jerry", was in the lobby of the Englewood Police Department and was using the after-hours phone to contact dispatch. Police officer James Cole ["Cole"] received the dispatch at the Englewood Police Department and went to the lobby to contact "Jerry". The lobby was empty, and Cole was unable to locate or make contact with this person, even after a search of the immediate area around the police department.

According to Plaintiff, Defendants have not disclosed any person who actually talked to "Jerry", any audio recording of the call allegedly made by "Jerry", or any surveillance video of "Jerry" on the lobby phone. However, Plaintiff also has not presented any information which leads her to believe that Defendants fabricated the information that "Jerry" made a report of a possible overdose at her apartment.

Police Officers Brian Cousineau ["Cousineau"][1] and Thomas Beach ["Beach"] immediately responded to Plaintiff's residence. Upon their arrival, they pounded on the door, announced their presence, and received no response from the residence. Cousineau testified that he contacted dispatch and requested that dispatch telephone the residence as well as attempt to locate an on-site manager at the apartment complex. He testified he was told by dispatch that there was no telephone number for the residence and no manager to contact.[2]  Police Officer Cole then arrived on the scene.  He informed Cousineau and Beach that he had unsuccessfully attempted to locate the caller "Jerry".[3]

Officers from the Fire Department arrived, including Gail Conner ["Conner"], Troy Nicholson ["Nicholson"] and Randall Pickrel ["Pickrel"].  Defendants Miles Kubly ["Kubly"] and Dan Alley ["Alley"] from the Fire Department were also present.[4]  Nicholson and some of the Fire Officers were informed that there was a report from a walk-in citizen at the police department of a woman in the apartment who had overdosed on drugs.

Cousineau and Beach briefed their supervising officer of the situation, and the decision was made by the Police Officers not to enter the home.  Plaintiff says this decision was made by the supervising officer.  More specifically, according to Plaintiff, a

---

[1] Plaintiff spelled this Defendant's last name as "Cosaineau" in the Complaint. However, the deposition testimony attached to the summary judgment motion shows that the correct spelling of this name is Cousineau; thus, I have used that spelling for purposes of this motion.

[2] Plaintiff asserts in response to this testimony that no dispatcher has been disclosed regarding this request and no communication tapes or logs have been provided.

[3] Plaintiff also relies on testimony of Cole to refute Cousineau's claim that he contacted dispatch. While Cole states that he did not hear such a telephone call, he arrived on the scene after Cousineau and Beach. Thus, Cole's testimony does not actually contradict Cousineau's testimony.

[4] The officers from the Fire Department are hereinafter referred to as the "Fire Officers". The officers from the Police Department are referred to as the "Police Officers".

-3-

Sergeant Contos was briefed and after being told that no one could find or verify the legitimacy of "Jerry", he directed that no entry could be lawfully made. Plaintiff also asserts that the Fire Officers were present when this decision was made, to which Defendants respond that there is no factual evidence in the record that the Fire Officers were aware of this decision.

Nicholson, as the Acting Lieutenant for the Fire Officers, decided, based on his own assessment of the situation, that entry into the residence needed to be made for the following reasons: (1) he and his crew were dispatched specifically to Plaintiff's residence on a possible suicide/overdose; (2) after sufficient knocking on the door and identifying themselves as fire personnel, Nicholson concluded that a patient was inside and unconscious from an overdose; (3) the Fire Officers needed to gain entry to make sure that the patient was going to be all right or in order to render immediate medical aid. The remaining Fire Officers who actually entered the residence also believed that there was a patient overdosing inside who was not answering the door, and that they needed to get inside because that person could be dying.

Further, the evidence presented by the Fire Officers is that they believed that calls dealing with a possible overdose/suicide are dangerous and that they needed the Police Officers for their protection. Plaintiff asserts, however, that no Defendant has pointed to any policy which supports this. Once the Fire Officers made the decision to enter the residence, the Police Officers testified they believed that they needed to enter in order to ensure the safety and well being of the Fire Officers. More specifically, Beach believed that there was a possible threat due to the dispatch of a possible suicidal party – his

experience had shown that some people try to commit "suicide by cop" or try to take people with them. Cousineau believed that the person inside could be dying.[5]

The Fire Officers knocked on the door, announced their presence, and received no response from the residence. Specifically, it appears that Alley knocked on the door at least two times and stated in a loud voice, "Fire Department." Once the decision was made by the Fire Officers to enter the apartment, the door to Plaintiff's residence was pried open. The Fire Officers did not enter the apartment, however, until after the Police Officers. The Police Officers entered the apartment with their guns drawn, yelling "Police". Upon entering, Cousineau and Beach conducted a roughly 30 second to one minute visual sweep of the apartment to clear it for safety reasons. The Police Officers then told the Fire Officers it was safe for them to enter. Thereafter, a limited search of the apartment took place to look for empty pill bottles.

Although not discussed in the Statement of Undisputed Facts and not relevant to my determination of Defendants' motion, Defendants' brief in support of their motion indicates that upon entry into the apartment, a woman, later identified as Plaintiff, came out of the back hallway and was told to put her hands up and to walk towards the officers. Defendant Conner, a medic, immediately made contact with Plaintiff and told her to sit down. Plaintiff indicated that she was okay and that she had not taken any drugs. Conner checked Plaintiff's vitals, which appeared to be normal, and the decision was made not to

---

[5] Plaintiff asserts that the Defendants do not point to any reasonable particularized belief, based on the situation presented, that the safety of any person was in jeopardy if the police did not enter the apartment. I find this is legal argument rather than a disputed fact.

take Plaintiff to the hospital. Plaintiff was informed of the report of a possible suicide/overdose and the reason behind the entry. Defendants then left the apartment.

Plaintiff contends that prior to entry into the apartment, Dianne Bridges, a neighbor of Plaintiff's, had advised police or fire personnel on the scene that there must be some mistake as to the report of a possible suicide/overdose in Apartment 205 because the occupant of the apartment at issue is Bonnie Winchester, her boyfriend is a trucker and is not named "Jerry", and Bonnie does not do drugs. Further, she advised that Bonnie Winchester had taken a pain pill before going to bed that night. Defendants do not recall speaking to any such person, but accept these facts for purposes of this motion only.

Finally, Defendants' motion claims that certain Defendants were not involved in the entry into and/or search of Plaintiff's residence. Specifically, as to Defendant Cole, it is asserted that he stood on the ground floor of the apartment complex at the bottom of the stairs leading to Plaintiff's residence, was not involved with the decision to enter the apartment, and did not enter the apartment. Plaintiff claims in response that Cole admits he authorized Plaintiff's Exhibit 3 in which he speaks of the entry into the apartment in first person narration. Plaintiff also asserts that Cole's report fails to acknowledge that Sergeant Contos was present and that he determined that no lawful entry into the apartment could be made. Defendants acknowledge that this report does not contain each and every detail relating to the incident in question, but deny that these facts were "concealed."

As to Defendant Miles Kubly, it appears undisputed that he was not involved in the decision to enter Plaintiff's residence. He also did not enter the residence at any time.

III.    ANALYSIS

    A.    <u>Legal Framework</u>

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *Harlow* places a presumption in favor of immunity of public officials acting in their individual capacities. *Schalk v. Gallemore*, 906 F.2d 491 (10th Cir. 1990). Once the defense is raised by a defendant, the burden shifts to the plaintiff to come forward with facts or allegations sufficient to show both "'that the defendant's actions violated a constitutional or statutory right'" and that the right "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Albright v. Rodriguez*, 51 F.3d 15531, 1534 (10th Cir 1995)).[6]

"[O]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). The test is one of objective reasonableness in light of the law at the time of the alleged violation. *Juntz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992), *cert. denied*, 508 U.S. 952 (1993).

---

[6] As the Eleventh Circuit noted, on summary judgment, the plaintiff has the burden of showing that a genuine dispute on facts material to the qualified immunity analysis exists. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993). "Conclusory allegations or evidence setting forth legal conclusions are insufficient to meet the plaintiff's burden." *Id.*

A plaintiff cannot defeat a defense of qualified immunity merely by alleging a violation of "extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized sense." *Id.* at 640. "[T]he 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Snell v. Tunnell*, 920 F.2d 673, 696 (10th Cir. 1990), *cert. denied*, 499 U.S. 976 (1991) (quotation omitted). This requires "some, but not necessarily precise, factual correspondence" between cases predating the alleged violation and the facts in question in this case. *Calhoun v. Gaines*, 982 F.2d 1470, 1475 (10th Cir. 1992). The burden is on the plaintiff to show that the law was clearly established at the time of the alleged violation. *Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir. 1991). If the law is clearly established, the question becomes whether the defendant's conduct was objectively reasonable in light of the clearly established law. *Breidenbach v. Bolish*, 126 F.3d 1288, 1291 (10th Cir. 1997).

    B.    <u>Application of Qualified Immunity in this Case</u>

Under the foregoing analysis, I first must address whether Plaintiff has come forward with facts or allegations sufficient to show that Defendants' actions violated a constitutional or statutory right. If she has made such a showing, I next must determine whether the right was clearly established at the time of Defendants' unlawful conduct. I find that Plaintiff has not shown the violation of a constitutional right as to Defendant Kubly, since it is undisputed that Kubly was not involved with the decision to enter

Plaintiff's residence and did not actually enter the residence. Thus, Defendants' Motion for Summary Judgment is granted as to Kubly.

Although Defendants argue that the same analysis applies to Cole, construing the evidence in the light most favorable to Plaintiff as I must for purposes of this motion, Plaintiff has raised at least an inference from Cole's report that he may have been entered the apartment. Accordingly, I deny the motion for summary judgment on the grounds that Cole was not involved with the incident in question.

I now turn to whether Plaintiff has shown the violation of a constitutional right and whether that right was clearly established as to all Defendants other than Kubly. The law is clear that entry into and search of a home conducted without a warrant are presumptively unreasonable under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586 (1980); *see also United States v. Rhiger*, 315 F.3d 1283, 1287 (10th Cir. 2003), *cert. denied*, 540 U.S. 836 (2003). There are certain exceptions to such rule. For example, as *Payton* recognized, entry into a home is authorized if there are exigent circumstances. *Id.* at 590; *see also Rhiger*, 315 F.3d at 1287 ("[a]bsent exigent circumstances, th[e] threshold [of the house] may not reasonably be crossed without a warrant").

Thus, the issue becomes whether there were exigent circumstances that allowed Defendants to enter Plaintiff's home. The Tenth Circuit defined exigent circumstances in *United States v. Smith*, 797 F.2d 836 (10th Cir. 1986) as follows:

> The basic aspects of the 'exigent circumstances' exception are that (1) the law enforcement officers must have reasonable grounds to believe that there is an immediate need to protect their lives or others or their property or that of others, (2) the

-9-

> search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.

*Id.* at 840. The Government bears the burden of establishing exigency, and the court must be "'guided by the realities of the situation presented by the record.'" *Rhiger*, 315 F.3d at 1288 (quotation omitted). The circumstances must be evaluated "'as they would have appeared to prudent, cautious and trained officers.'" *Id.* (quotation omitted).

Here, both the Police Officers and Fire Officers present undisputed evidence that they learned of a possible suicide/overdose by a person in Plaintiff's residence. The Officers had reasonable grounds to believe based on this evidence that someone in the residence might be in need of immediate medical aid and possibly even dying. This belief was substantiated by the failure of anyone in the residence to respond to the Officers' knocks on the door and their announcement as to who they were.[7] After the Fire Officers decided to enter the home, the Police Officers entered the home to ensure the safety and well being of the Fire Officers. There is evidence that all of the Officers involved believed that situations involving overdoses and/or suicides may be dangerous.

Plaintiff has presented no evidence that, once in the apartment, the limited search to find pill bottles was motivated by any intent to seize evidence. Instead, the evidence is that this search was motivated by the need to know whether an overdose of pills had occurred and to render medical aid in connection with such an overdose. Finally, the

---

[7] While Plaintiff may assert that the neighbor's statements to police personnel on the scene about there being a mistake should have dispelled their belief in an emergency, I disagree. The police did not know the neighbor or her relationship to the Plaintiff, and they still had a duty to ensure the safety and well being of the person in the residence.

evidence of the possible overdose/suicide shows that there was a reasonable basis, approximating probable cause, to believe an emergency situation existed at Plaintiff's residence.

Based on the foregoing, I determine that Defendants have established that there were exigent circumstances and/or an emergency situation that allowed them to enter Plaintiff's home and conduct the limited search for pills. The Supreme Court has indicated that it does not question the right of the police to respond to emergency situations. *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). It further recognized that established case law holds that the Fourth Amendment "does not bar [officers] from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate assistance." *Id.* This is because "'[t]he need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency.'" *Id.* (quoting *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963)); *see also Wharden v. Hayden*, 387 U.S. 294, 298-99 (1967) ("[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others").

The Tenth Circuit has also indicated that exigent circumstances may exist where there is an immediate threat of death or serious physical harm. *Roska v. Peterson,* 328 F.3d 1230, 1241 (10th Cir. 2003) (although it found that exigent circumstances did not exist in that case since there was no evidence of such a threat); *see also United States v. Riccio*, 726 F.2d 638, 643 (10th Cir. 1984) (officers justified in entering home without warrant where person inside was in need of immediate aid). The majority of other Circuits

-11-

have also held that an emergency situation where a person is believed to be in need of immediate aid allows the police to enter a home without a warrant.  *See United States v. Holloway*, 290 F.3d 1331, 1335-36 (11th Cir. 2002), *cert. denied*, 537 U.S. 1161 (2003); *Seymour v. Walker*, 224 F.3d 542, 556 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001); *United States v Cervantes*, 219 F.3d 882, 889 (9th Cir. 2000), *cert. denied*, 532 U.S. 912 (2001); *United States v. Richardson*, 208 F.3d 626, 629-30 (7th Cir.), *cert. denied*, 531 U.S. 910 (2000); *Tierney v. Davidson*, 133 F.3d 189, 196-99 (2nd Cir. 1998); *United States v. Moss*, 963 F.2d 673, 678 (4th Cir. 1992).

Finally, I note that the Colorado Supreme Court has recognized an "emergency" doctrine that creates an exception to the warrant requirement where there is an emergency threatening the life or safety of another.  *See People v. Hebert*, 46 P.3d 473, 478 (Colo. 2002); *People v. Kluhsman*, 980 P.2d 529, 535 (Colo. 1999); *People v. Harper*, 902 P.2d 842, 845 (Colo. 1995); *People v. Amato*, 562 P.2d 422, 423-24 (Colo. 1977).  At a minimum, based on the foregoing, I find that it was objectively reasonable for the Defendants to have believed that the entry into the residence and limited search for empty pill bottles to be legal under this exception.

Plaintiff argues, however, that Defendants cannot rely on the doctrine of exigent circumstances because this doctrine "requires a 'reasonable belief' which mandates that government actions be undertaken upon 'reasonable information.'"  Pl.'s Resp. to Def.'s Mot. for Summ. J. ["Pl.'s Resp.] at 6 (citing *Rhiger*, 315 F.3d at 1288).  More specifically, it is argued that Defendants relied on an anonymous tip that had not been sufficiently verified.  Plaintiff asserts that at the time of the incident in question, "the law was clearly

established that it was constitutionally unreasonable to act upon unverified anonymous information where the Fourth Amendment" is implicated." Pl.'s Resp. at 7 (citing *United States v. Tuter*, 240 F.3d 1292, 1295-1296 (10th Cir. 2001)).

It is true that the Supreme Court has indicated that reliance on an anonymous tip requires "'sufficient indicia of reliability [regarding the tip] to provide reasonable suspicion . . . .'" *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (quoting *Alabama v. White*, 496 U.S. 325, 327 (1990)). Those cases indicate that the tip should provide some type of "predictive information" such that the police have means to test the tipster's knowledge or credibility. *J.L.*, 529 U.S. at 271; *White*, 496 U.S. at 329-31; *see also Tuter*, 240 F.3d at 1297.

However, as Defendants recognize in their reply brief, those cases did not involve situations where there was an emergency circumstance or exigency presented of someone possibly in need of medical aid. *J.L.* involved a "stop and frisk" of an individual suspected of carrying a gun. *White* involved an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968). Thus, I find that Plaintiff cannot rely on these cases as demonstrating clearly established knowledge in the context of this case.

I further note that the Supreme Court in *J.L.* specifically stated that the facts of that case did not require the Court "to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability." *Id.* at 273. Thus, it recognized that there might be circumstances in which an anonymous tip may be acted upon even without the sufficient indicia of reliability. *Id.* An example given was of a person carrying a bomb. *Id.*

The Tenth Circuit also recognized that certain exigent or emergency situations may be the basis of a relaxed standard, although it found that none had been presented in that case. More specifically, the Tenth Circuit in *Tuter* recognized that *J.L.* "did state in dicta the possibility of a relaxed standard in the case of information suggesting imminent mass destruction." *Id.*, 240 F.3d at 1298. However, the Tenth Circuit "did not believe . . . that an uncorroborated report of someone 'making' a pipe bomb in his or her garage carries with it quite the same sense of urgency and risk of imminent harm as present in a report that someone is 'carrying' a bomb. *Id.* More importantly, the Tenth Circuit noted that the agent said nothing in his affidavit about "an exigent or emergency situation or about an increased risk to the public." Thus, the Tenth Circuit did not apply a relaxed standard to a search of the home for the pipe bombs.

While Plaintiff relies upon *Tuter* for its argument that the law was clearly established, I find that *Tuter* is not controlling on this issue. As noted above, the Tenth Circuit in *Tuter* specifically found that exigent circumstances or an emergency situation had not been invoked by the agent as a grounds to justify the search. Thus, it did not address when an emergency situation or exigency may provide a basis to enter a home and conduct a limited search without a warrant based on information from an anonymous tip. In short, Plaintiff has not cited any case from the Supreme Court, the Tenth Circuit, or otherwise which holds that reliance on an anonymous tip that someone is in need of medical aid cannot justify entry into a home under the doctrine of exigent or emergency circumstances.

I also note that Defendants did not just rely on the tip in question -- they also knocked on the door, loudly announced their presence and received no response. Further, while they were told by the neighbor that the person in the residence did not do drugs, she did indicate that the residence of the apartment took a pain pill. In other words, based on the evidence presented by Plaintiff, it was confirmed to the Officers that the resident in the apartment took some type of drug or medication before going to bed and was not answering the door. This also gives some corroboration to the report of a possible overdose. Plaintiff has cited no clearly established law which holds or suggests that the Fourth Amendment would be violated in connection with these circumstances. *See Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 599 (2004) (the inquiry into whether the law is clearly established "'must be undertaken in light of the specific context of the case, not as a general broad proposition'") (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Finally, even if the Defendants were incorrect in their belief that they could enter Plaintiff's home under the circumstances stated above, I find that this mistake was reasonable given the uncertainty in the law in this area. *See Brosseau*, 125 S.Ct. at 599 ("[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted"); *Saucier*, 533 U.S. at 205 ("if the officer's mistake as to what the law requires is reasonable. . . the officer is entitled to qualified immunity"). Accordingly, I find that Defendants are entitled to qualified immunity, and grant their Motion for Summary Judgment.

III.     CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment filed March 2, 2005, is **GRANTED** on the basis of qualified immunity. It is

FURTHER ORDERED that the trial set to commence on Monday, January 23, 2006, and the final trial preparation conference set Tuesday, January 10, 2006, are **VACATED**.

Dated: December 21, 2005

                                          BY THE COURT:

                                          s/ Wiley Y. Daniel
                                          Wiley Y. Daniel
                                          U. S. District Judge